(77 South. 679)

O'ROURKE v. WOODWARD. (6 Div. 435.)

(Supreme Court of Alabama. Nov. 15, 1917. Rehearing Denied Jan. 24, 1918.)

1. CARRIERS ⬅238—EXISTENCE OF RELATION —ELEVATOR PASSENGER.

Where an express delivery man or messenger having packages for delivery to the tenants in a public office building was required, as was the custom, to use the freight elevator when delivering such packages, the relation of carrier and passenger existed between the owner of the building and him.

2. CARRIERS ⬅288—INJURIES TO PASSENGERS —FREIGHT ELEVATORS.

Though one properly riding on a freight elevator in an office building was a passenger and the owner of the building was required to exercise the highest degree of care' and diligence in the operation and management of the elevator for his safety, he assumed the risk and inconveniences incident to such conveyance, and negligence could not be predicated on the failure to equip the elevator as a passenger elevator should be equipped, where it was properly guarded and properly constructed as a freight elevator.

3. CARRIERS ⬅295(2), 302(2) — INJURIES TO PASSENGERS—FREIGHT ELEVATORS.

The owner of an office building had a right to carry warehouse trucks on a freight elevator on which plaintiff was properly riding to accom-

pany freight, but if the trucks were so negligently placed as to be caused to fall by the vibration of the car, and plaintiff's injuries proximately resulted therefrom, or if the car was so negligently operated as to cause the trucks to fall without fault on plaintiff's part, he was entitled to recover.

4. CARRIERS ⬅331(1)—LIABILITY FOR INJURIES—CONTRIBUTORY NEGLIGENCE.

If an accident to plaintiff while riding on a freight elevator in an office building was the result of plaintiff's sitting down on trucks on the elevator, causing them to move and carry him into the open space between the floor of the elevator and the ceiling of the floor above, he could not recover.

5. TRIAL ⬅253(9)—INSTRUCTIONS—IGNORING ISSUES OR FACTS.

In an action for injuries to a person riding on a freight elevator in an office building caused by the movement of trucks thereon, where defendant insisted that plaintiff deliberately sat down on the trucks and plaintiff that he did not touch the trucks at all, and there was no evidence indicating in the least that plaintiff unintentionally touched the trucks, or that any one else disturbed them, instructions were not erroneous because they pretermitted the theory that plaintiff or some other person on the car might have unintentionally come in contact with the trucks.

Appeal from City Court of Birmingham; C. W. Ferguson, Judge.

Action by George M. O'Rourke, pro ami, etc., against Angeline Woodward, executrix, etc. From a judgment for defendant, plaintiff appeals. Affirmed.

Suit for damages for personal injuries sustained by the plaintiff while being carried as a passenger on an elevator in the Brown-Marx Building, a public office building in the city of Birmingham, on February 11, 1915, resulting in the loss of plaintiff's right leg, and other injuries. The cause was tried upon counts 2 and 3 of the complaint, and the plea of the general issue, and special pleas of contributory negligence. Count 3 reads as follows:

"On, to wit, the 11th day of February, 1915, the defendant was the owner of that certain office building known as the Brown-Marx Building located on the northeast corner of the intersection of First avenue and Twentieth street in the city of Birmingham, Jefferson county, Ala., and used and operated in said building and in connection therewith conveyances known and called 'elevator cars,' among other purposes, for conveying to the floors of said building above the grade or ground floor persons having business with the occupants of the rooms or offices on said floors of said building. And plaintiff avers that on the date aforesaid, he, as a servant, agent, or employé of the Southern Express Company, had business with the occupants of some of the offices on some of the floors above the grade or ground floor of said building, and, in the pursuit of such business and the transaction thereof, the plaintiff was, by a servant, agent, or employé of the defendant called an elevator conductor, viz. one Lucius Miles, while acting within the line and scope of his duty and employment as such elevator conductor, being conveyed in one of said elevator cars to the sixteenth floor of said building, when the plaintiff avers the defendant so negligently conducted her business in and about so conveying the plaintiff as that the plaintiff's legs were mashed," etc., followed by an enumeration of his resultant injuries.

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Plea 2 reads as follows:

"Contributory negligence in this: Plaintiff who was riding on an elevator used for the carriage of freight, negligently placed himself against a pair of trucks then and there leaning against the side of said elevator, and negligently caused said trucks to fall with him to the floor and into the opening between said elevator and the floor of said building, and as a proximate consequence," etc.

The evidence for plaintiff tended to show that on February 11, 1915, he was in the service of the Southern Express Company as a deliveryman or messenger, in the city of Birmingham, and' that on said date he had for delivery to certain of the tenants in the public office building of defendant, known as the Brown-Marx Building, a number of express packages; that he was delivering said express packages in said building in pursuit of the business of his employer; that the said building was owned by the defendant, and in connection therewith, at said time, defendant maintained and used passenger and freight elevators by means of which the defendant's tenants in said building, and the persons having business with them, were conveyed to the various floors thereof, and other elevators, by means of which express packages, freight, etc., were conveyed to said tenants; that on said date plaintiff had a number of express packages or freight for delivery to certain of said tenants in said building; and that upon his arrival he went to one Andrews, who was then the superintendent of the running and operation of elevators in said building, and asked him if he could use the passenger elevator to take said express packages up into the building to the tenants for whom they were intended, and his request was declined, but he was directed to use the freight elevator for that purpose, and that, in fact, he had all along been required to use said freight elevator in delivering such freight. Among the freight for delivery was a shrubbery, several feet in height. Thereupon, plaintiff went to the freight elevator with his freight or packages, and himself rode therein for the purpose of delivering the packages upon the different floors where they were destined. Several stops were made in ascending, at different floors, and at the ninth floor plaintiff set out in the hallway express packages destined for that floor, and then returned to the elevator, walked over to the west side and leaned against the wall of the same, when he then observed a pair of warehouse trucks in the elevator standing on end and tilted; that thereupon the elevator began to ascend, and when, in its progress it reached a point between the eleventh and twelfth floors, said trucks fell, causing plaintiff to fall upon them, and he was carried off the elevator floor, and his legs caused to protrude over the elevator floor and into an unprotected opening between the top of the guard in front of the elevator shaft between the eleventh and twelfth floors and the ceiling of the eleventh floor, and in this position, with his legs protruding over the side of the elevator floor, as the elevator continued to ascend, the plaintiff's legs were caught between the floor of the elevator and the ceiling of the eleventh floor, and so crushed that the amputation of plaintiff's right leg was necessary. Plaintiff was 20 years old, and this suit is brought by his next friend. Plaintiff further testified that the elevator stopped more suddenly at the ninth floor, different from the way it had stopped theretofore, and that as the elevator ascended from the ninth floor he noticed a peculiar vibration, and the elevator began to shake. Plaintiff's testimony tends to show that the trucks were negligently placed in the elevator, by being too much tilted, and that the peculiar and unusual vibration of the elevator caused the trucks to fall and carry plaintiff from off his feet and into the opening, thus causing the injury. Plaintiff testified positively that he did not touch the trucks.

The evidence for defendant tended to show that the trucks were in the northwest corner of the car, sitting up against the west wall, and the tips were resting on the floor and the handles were back against the wall, and the wheels were resting on the floor, and that plaintiff got upon the trucks and sat down on the top, and put his feet on the bottom rung, causing the trucks to slip out from under him, and slide along the floor. There were in the car at the time only the plaintiff, the elevator boy, and a negro maid. The car was not used as a passenger elevator, but for freight and express packages, and those wishing to accompany the freight rode on this car. The front of the elevator was open, but there were sliding gates on each floor attached to the floor, yet not connected with the elevator. The evidence for defendant tended to show that the elevator in question was of the proper kind, and properly constructed as a freight elevator, and that the sliding gate in this instance formed a proper inclosure, and was in accordance with modern practice on freight elevators, and that, in fact, the guarding around this particular elevator shaft was more complete than is usual and customary in freight elevators by reason of the fact that the standard inclosure across the elevator hatchways is from 4 to 5 feet high, while the one in question was 7 feet, 6 inches, and a portion of it entirely across the ceiling.

The following charges were given by the court at the request of defendant, and constitute the assignments of error on this appeal:

"(16) The court instructs the jury that the owner of a freight elevator is not required to exercise the highest degree of care in supplying and maintaining guards and safety appliances in connection with said elevator for the protection of persons riding thereon with freight, but is merely required to exercise reasonable care,

such as would be exercised by a reasonably prudent person under similar circumstances."

"(I) The court charges the jury that, even though the defendant had the gating over the elevator shaft on each floor constructed with an open space at the top in this case, such construction would not constitute actionable negligence, and the plaintiff would not be entitled to recover therefor."

"(X) I charge you gentlemen of the jury that if you believe from the evidence that the plaintiff leaned or rested his weight on the trucks, and that as a proximate result of his so doing he was injured, then your verdict must be for the defendant."

"(J) The court charged the jury that the mere presence of the trucks upon the car in which plaintiff was riding would not entitle the plaintiff to recover, and before the plaintiff can recover against the defendant on account of the presence of these trucks on the car, it must be reasonably established that the trucks were placed in such a manner in the car that they were caused to fall from the movement or operation of the car, and unless the trucks were caused to fall by the movement or operation of the car, the defendant would not be liable to the plaintiff."

"(K) Unless the jury believe from the evidence that the trucks on the elevator were so placed in the elevator that they would likely be caused to fall by a jar or movement of the car, and unless the jury are further reasonably satisfied from the evidence that the trucks were caused to fall by the movement or operation of the car on the occasion complained of, the jury should return a verdict for the defendant."

"(N) The court charges the jury that under the evidence and issues in this case the defendant had a right to operate the elevator in question with the pair of trucks upon it in that part of the elevator in which, under the evidence, they were carried, if said trucks were placed in said place in such a position that they would not be caused to fall by the movements or operation of the elevator."

"(C) The court charges the jury that if you believe from the evidence that the plaintiff placed his foot or some part of his body against the trucks, and that this was the sole proximate cause of their falling, you should return a verdict for the defendant."

"(F) The court charges the jury that, even though you believe from the evidence that the opening in the gating protecting the floors of the building from the elevator shaft should have entirely covered the shaft on each floor, and even though the jury may believe from the evidence that the trucks should not have been carried in the elevator at all, and even though the jury believe from the evidence that the trucks were placed in the elevator in such a position that they were caused to fall by the vibration of the elevator, or the manner in which it was running, yet if the jury are further reasonably satisfied from the evidence that the plaintiff negligently leaned against the trucks or his foot or body touched the trucks, or any other part of his body, and that this conduct on his part proximately contributed even in the slightest degree to cause the trucks to fall, you should find a verdict for the defendant."

The cause was submitted to the jury upon the issues above indicated, resulting in a verdict for the defendant, and from the judgment following, the plaintiff prosecutes this appeal.

John T. Glover and Charles A. Calhoun, both of Birmingham, for appellant. R. H. Thach and Stokely, Scrivner & Dominick, all of Birmingham, for appellee.

GARDNER, J. The foregoing statement of the case suffices as a general outline of the issues upon which the cause was submitted to the jury, and the questions presented for review on this appeal. The only assignments of error argued in brief of counsel for appellant relate to the action of the court in giving the charges at defendant's request which are set out in the statement of the case.

[1] The plaintiff was a deliveryman or messenger for the Southern Express Company, and at the time of the unfortunate accident was engaged in delivering packages intended for the tenants occupying the public office building owned by the defendant. He was required, as was the custom, to use the freight elevator when delivering such packages or freight. We think it quite clear that there was established under the facts as shown in this record the relation of carrier and passenger between the plaintiff and the defendant. Morgan v. Saks, 143 Ala. 139, 38 South. 848.

It is insisted by counsel for appellant that there was error in giving charge 16 at defendant's request for the reason that the liability of the owner of a freight elevator to a passenger, lawfully and rightfully upon it, is measured by the same rules applicable to the owner of passenger elevators, and that such owner is not only required to exercise the highest degree of care in the operation of the elevator, but also in its equipment, citing in support of this contention the case of Springer v. Ford, 189 Ill. 430, 59 N. E. 953, 52 L. R. A. 930, 82 Am. St. Rep. 464, and Beidler v. Branshaw, 200 Ill. 425, 65 N. E. 1086.

In Lawrence v. Kaul Lbr. Co., 171 Ala. 300, 55 South. 111, speaking to a situation somewhat analogous to that here presented, the court said:

"When, however, the passenger chooses to be transported on a train, not adapted to passenger service, such as a freight or a logging train, while he does not waive the carriers' duty of due care with respect to his safety, he does waive all such precautions, whether in equipment or operation, which are inconsistent with the ordinary use and conduct of such a train, and cannot expect the carrier to change or adapt his service to the extraordinary requirements of a common carrier of passengers. In other words, he assumes the risk of injury from such accidents as are incident to such trains when equipped and operated in the usual way."

See, also, in this connection, So. Ry. Co. v. Crowder, 130 Ala. 256, 30 South. 592; So. Ry. Co. v. Burgess, 143 Ala. 364, 42 South 35.

The case of Orcutt v. Century Bldg. Co., 201 Mo. 424, 99 S. W. 1062, 8 L. R. A. (N. S.) 929, from the Supreme Court of Missouri, is very much in point, the plaintiff in that case having suffered his injuries while in a freight elevator accompanying his freight, as was the general custom. The court in that case recognized the rule that the relation of passenger and carrier existed, and that such

relation placed the duty upon defendant to exercise the highest degree of care and diligence in and about the operation of the elevator to prevent injury to the passenger, just as is required of common carriers in the operation of regular passenger trains; with the difference, however, that the passenger submits himself to the inconvenience and dangers necessarily attending that mode of conveyance. After reviewing a number of cases, the court to make more clear its position, said:

"From the cases both here and elsewhere it appears that, in taking passage upon a freight train, or a freight elevator, the passenger assumes the usual hazards attending that mode of conveyance, but not those arising from the negligence of the company, which are not usual and incident to the mode of conveyance. If the freight train was ditched by defective track, and this resulted in the failure to safely transport the passenger, the company would be liable. So, too, if the accident was the result of defective machinery, or inefficient conduct of the servants operating the train. In other words, the same degree of care as to the passenger is required as if he were on a passenger train, save and except the passenger assumes the usual and ordinary inconveniences, and the additional hazards incident to the mode of conveyance. So with a passenger in a freight elevator. Such passenger cannot complain of the usual inconveniences incident to such a conveyance, nor can he complain of the hazards usually incident to that mode of conveyance. He can, however, complain of the negligent operation of the elevator, or of the defective machinery and appliances used in the operation thereof, and in such cases the doctrine res ipsa loquitur applies, as is usual in cases of passenger and carrier."

That case also cites from the Supreme Court of Michigan, Hall v. Murdock, 114 Mich. 233, 72 N. W. 150, where the court said:

"When one knows that the elevator is designed for freight alone, he must be held to know that it is not equipped with the same regard for safety that a passenger elevator is or should be. * * * When, therefore, one is permitted or invited by the owner to ride upon a freight train or elevator, such owner does not guarantee that either is equipped with the most approved appliances in use upon those carrying passengers. * * *"

An interesting note upon the subject is to be found in 2 L. R. A. (N. S.) p. 744, as a note to the case of Edwards v. Manufacturers Bldg. Co.

We have read with care the case of Springer v. Ford, supra, from the Supreme Court of Illinois, also cited in 52 L. R. A. 930, and relied upon by counsel for appellant. We are not persuaded that this case supports the contention of appellant to the effect that the equipment of a freight elevator upon which passengers are permitted to ride in accompanying their freight must be the same as is required in the proper construction of elevators used for passengers only. Indeed, we think this is clearly demonstrated in the subsequent case from the same court of Beidler v. Branshaw, supra, wherein the case of Springer v. Ford, supra, is cited, the court using the following language:

"The law is well settled in this state that persons operating elevators in buildings for the purpose of carrying persons from one story to another are common carriers of persons, and are required to exercise the highest degree of care and diligence in and about the operation of such elevators to prevent injury to passengers being carried thereon, and that the rules governing the liability of persons owning and operating passenger elevators in buildings apply to persons operating freight elevators when a person is rightfully upon such elevator as a passenger, and that while, from the necessary construction of a freight elevator, there cannot, in the nature of things, be the same immunity from peril upon a freight elevator as upon a passenger elevator, still the same degree of care must be exercised in the operation of each class of elevators to protect persons from injury who are thereon as passengers."

There is no insistence that the elevator here in question was not properly guarded and properly constructed as a freight elevator, but it was not equipped for the safety of passengers, as is a passenger elevator.

[2, 3] The plaintiff had freight for delivery, and to accompany the same he took passage on the freight elevator, and while this constituted him a passenger and required of defendant the exercise of the highest degree of care and diligence in the operation and management of the elevator for his safety, yet we think the above authorities disclose that he assumed the risk and inconveniences incident to such a conveyance, and that the negligence of defendant could not be predicted upon the failure to equip the freight elevator the same as a passenger elevator should be equipped. Upon the same reasoning, of course, the defendant had the right to carry on the elevator the warehouse trucks which seem to have been the cause of the accident. If, however, the trucks were so negligently placed in the car as to be caused to fall by the vibration of the car, and the injuries suffered by the plaintiff proximately resulted therefrom, or if the car was so negligently operated as to cause the trucks to fall—and this without contributory fault on the part of plaintiff—he would be entitled to recovery.

[4, 5] If the accident was the result of plaintiff's sitting down upon the trucks, with his feet upon the bottom rungs, thus causing the trucks to carry him into the open space between the floor of the elevator and the ceiling of the eleventh floor, as contended by the defendant, then plaintiff on account of this contributory negligence, would not of course be entitled to recovery. These were the issues of fact presented for the jury's determination. The defendant insisted that plaintiff deliberately sat down upon the trucks, and plaintiff insisted that he did not touch the trucks. There was no evidence indicating in the least that plaintiff unintentionally touched the trucks, or that any one else disturbed the trucks in the slightest.

Counsel for appellant insists that a number of the charges for the defendant, viz. X, J, K, C, and F, were improperly given,

for that they pretermit the theory that the plaintiff, or some other person on the car might have unintentionally come in contact with the trucks. As previously stated, however, the issues of fact were squarely presented for the jury's determination, either that the trucks were negligently placed on the car so as to cause their fall by the unusual vibration thereof, or else were caused to fall by the negligent operation of the car, or, as contended by defendant, fell on account of the deliberate act of plaintiff. There being, therefore, no evidence indicating that they were caused to fall otherwise, we are of the opinion the charges referred to cannot be condemned so as to reverse the cause for pretermitting these theories or suppositions which are unsupported by any tendencies of proof.

The oral charge of the court we think clearly demonstrates that the above-stated issues of fact were properly submitted to the jury, and by them clearly understood. We need not review every charge separately. What we have here said shows our conclusion that there was no reversible error in the action of the court in giving any of the charges requested by the defendant, and set out in the statement of the case. The judgment of the court below will accordingly be affirmed.

Affirmed.

ANDERSON, C. J., and McCLELLAN and SAYRE, JJ., concur.